UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHSTATE BANK, N.A., | No. 2:25-cv-1970 DAD AC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CAPITAL AIR TOOL SYSTEMS, INC, and CURTIS DAHMEN, | |
| Defendants. | |

This matter is before the court on plaintiff's motion for default judgment. ECF No. 9. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19). The motion was taken under submission on the papers on August 26, 2025, but restored to the calendar on October 2, 2025. ECF Nos. 10, 12. For the reasons set forth below, the undersigned recommends plaintiff's motion be GRANTED and that judgment be entered in favor of plaintiff.

**I.     Relevant Background**

Plaintiff filed this complaint on July 15, 2025, asserting jurisdiction under 28 U.S.C. §1332. ECF No. 1 at 1-2. Plaintiff Southstate Bank, N.A., alleges that it is a national banking corporation with a principal place of business in Florida. Id. at 1. Defendant Capital Air Tool Systems, Inc. ("Capital") is a corporation formed under the laws of California with its principal place of business in Sacramento County. Id. Defendant Curtis Dahmen, a California citizen, is Capital's President. Id. Plaintiff further alleges that it is the successor-in-interest to Atlantic Capital Bank, N.A. ("ACB"). Id.

1

The Complaint alleges that on August 31, 2021, Capital executed a $515,100 Note (id. at 11-16) secured by a Loan and Security Agreement with ACB (id. at 18-39). Id. at 2. Dahmen agreed to serve as guarantor for this loan and signed an Unconditional Guarantee to that effect. Id. at 18, 46-51.

The Note charged an initial interest of 5.5% per year, with adjustments on the first day of every calendar quarter such that the interest rate would remain 2.25% greater than the "Prime Rate" published in the Wall Street Journal. Id. at 12. Monthly payments would be $5,589.10, reflecting principal and interest alike. Id. Any payment more than 10 days late would result in a late fee, 5% of the payment owed. Id.

The Security Agreement gave ACB a security interest in various pieces of defendant's physical property, including a 2015 RAM vehicle, VIN # 3C6UR5HL1FG514423 ("Vehicle"). Id. at 2-3, 19 (Security Agreement, p. 2), 39 (Exhibit A to Security Agreement). ACB perfected its security interest in the property by recording a UCC Financing Statement with the California Secretary of State, and the Vehicle by recording its interest therein on the Certificate of Title. Id. at 3, 41-42, 44. Default would entitle ACB to, *inter alia*, accelerate the full amount owed, repossess all collateral through self-help, and pursue reimbursement from defendants of any attorney's fees and costs incurred to enforce the Security Agreement. Id. at 30, 33.

ACB and plaintiff merged in March 2022, leaving plaintiff as the owner and holder of the Note, Security Agreement, Unconditional Guarantee, UC Financing Statement, and Certificate of Title. Id. at 3. Defendants defaulted on the loan in December 2022 and every month thereafter. Id. at 3-4. On May 23, 2023, plaintiff sent a demand letter to defendants for payment of the $42,100.60 owed thus far by June 3, 2023. Id. at 54. Failure to do so would lead plaintiff to accelerate the $500,565.74 owed as of May 15, which included a $478,875.57 principal, $18,184.93 in unpaid interest thus far, and $3,505.24 in late fees. Id. Interest would also thenceforth accrue at a daily rate of $131.20. Id. To date, defendants have not cured the default.

The complaint seeks foreclosure of both the Note and the Guarantee, foreclosure under Cal. Com. Code § 9601 on plaintiff's security interest in the Vehicle and other personal property offered as collateral under the Security Agreement, and recovery of said property under Cal.

Com. Code § 9609 and Cal. Code of Civil Procedure § 667. Id. at 5-7. The complaint also seeks an accounting of amounts owed under the loan documents, including principal, interest, and attorney's fees and costs; possession of the Vehicle and other personal property offered as collateral under the Security Agreement; the right to sell such Vehicle and personal property; and deficiency judgment for the outstanding amount owed following such sale. Id. at 8-9.

Summons for both defendants were returned executed on July 23, 2025. ECF Nos. 4 and 5. The Clerk of Court entered default as to both defendants on August 19, 2025. ECF No. 8. Plaintiff filed the pending motion for default judgment on August 26, 2025. ECF No. 9. The motion was served on both defendants. ECF No. 11 at 2. Neither defendant responded to the motion, and neither defendant has made any appearance in this case.

## II.     Motion

Plaintiff moves for default judgment awarding $624,415.73 in damages, plus an order entitling plaintiff to recover all collateral in Capital's possession. ECF No. 9 at 3; ECF No. 9-2 at 1. The damages amount reflects "a principal balance equal to $478,875.57, accrued and unpaid interest of $130,566.54 (which continues to accrue at a rate of $127.92 per diem), and late fees of $14,973.62". ECF No. 9 at 4.

## III.     Analysis

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. The Eitel Factors

   1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for

4

recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

        2.    Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

Plaintiff brings various causes of action which all stem from defendants' default on the Note, Guarantee, and Security Agreement. ECF No. 1 at 5-7. The Note defines both the monthly payments owed thereunder, including the principal and interest, and the conditions under which plaintiff's predecessor could assess late fees. Id. at 12. The Security Agreement articulated the collateral which the ACB could repossess and sell in the event of default, including a Vehicle whose interest therein ACB perfected by recording on the Certificate of Title. Id. at 2-3, 19, 30, 33, 39, 41-42, 44. Five months after acquiring the debt through merger with ACB, plaintiff sent a demand letter warning defendants that failure to pay all amounts owed by June 3, 2023 would result in acceleration of the outstanding $478,875.57 principal. Id. at 54. This would bring the total amount owed to $500,565.74 upon adding $18,184.93 in unpaid interest and $3,505.24 in late fees. Id. The demand letter also advised defendants that interest would thereafter accrue at a daily rate of $131.20. Id.

Following entry of default, the court takes the complaint's well-pleaded allegations regarding liability as true. Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Accordingly, the court accepts as true that defendants defaulted on the Note, Guarantee, and Security Agreement; that they have not cured their default since the demand letter; and that the amount owed increases on a daily basis. ECF No. 1 at 4. The complaint is sufficient to support relief, and the court finds that the merits of the case favor entry of default judgment.

        3.    Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. Here, plaintiff seeks judgment in the amount of

5

$624,415.73, plus an order permitting plaintiff to take possession of the Vehicle and all other personal property defined as collateral in the Security Agreement. ECF No. 9 at 10. The value of this collateral upon resale would then be deducted from the judgment. Id. Although this amount is substantial, plaintiff argues that this amount is based on the terms of the Note and Guarantee. ECF No. 9 at 4, 8.

The amount at issue is proportionate to the seriousness of defendants' conduct and easily ascertainable from the terms of the Note and Guarantee. This factor therefore favors entry of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims. The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entertainment Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177. This factor favors entry of default judgment.

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff personally served the defendants with the summons and complaint. ECF Nos. 5-6. Moreover, plaintiff served defendants by mail with notice of its application for default judgment. ECF No. 11. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants failed to defend in this action. Thus, the record supports a conclusion that the defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

////

6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

7. Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendant. What remains is the determination of the terms of judgment.

C. Terms of Judgment

Plaintiff seeks judgment in the amount of $624,415.73, plus an order permitting plaintiff to take possession of the Vehicle and all other personal property defined as collateral in the Security Agreement. ECF No. 9 at 10. The amount owed is supported by declaration, ECF No. 9-1 (Declaration of James H. Chandler) at 4, ¶ 18, and the undersigned has already found that is proportionate to defendants' conduct. An order authorizing seizure of the collateral is also appropriate for the reasons set forth above. Because the property to which plaintiff is entitled has an estimated current value of $30,000, id., and the complaint indicates an intention to sell the seized collateral to partially satisfy the debt, ECF No. 1 at 8, it is recommended that the amount of damages be reduced by $30,000, for a total of $594,415.73.[1]

////

////

////

---

[1] The undersigned makes no recommendation regarding attorney fees and because the matter is insufficiently briefed and no documentation regarding fees and costs is before the court.

IV.     Conclusion

It is HEREBY RECOMMENDED THAT plaintiff's August 26, 2025 motion for default judgment (ECF No. 9) be GRANTED, and that judgment be issued as follows:

1. Damages are awarded in favor of Plaintiff Southstate Bank, N.A. and against Defendants in the amount of $594,415.73;
2. Plaintiff's security interests in certain personal property of Capital Air, specified in Exhibit "A" to the subject Security Agreement (ECF No. 1 at 39), are hereby foreclosed, and Plaintiff is entitled to recover immediate possession of said personal property as its true owner; and
3. Nothing in this Judgment is intended to limit or restrict the right or ability of Plaintiff to enforce this Judgment against Defendants by Writ of Execution and Writ of Possession.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: December 16, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE